Thank you, Your Honor. May it please the Court, Thomas Hungar for the BP Appellants. This Court clearly has jurisdiction over BP's appeal from the May 20th order. That order expressly bars BP from seeking appellate review of specified categories of awards, and therefore renders those awards immediately payable. Under this Court's decision in Deepwater Horizon 1, that fact is sufficient to confer appellate jurisdiction under the collateral order doctrine, because the denials of judicial review, excuse me, at the May 20th order itself, which blocks further review, conclusively determined BP's objections to those awards, which are issues separate from the merits of BP's liability for the oil spill, and which, if not reviewable now and only reviewable at the end of the case, BP's ability to recover overpayments would be either impossible or at least substantially limited as a practical matter. So the order is also appealable independently under 28 U.S.C. 1292a3, because it determines the rights and liabilities of parties to this admiralty dispute. Does it determine the rights or liabilities, or does it refuse to determine the rights and liabilities? Well, Your Honor, it conclusively resolves from the district court's perspective their various issues. It's the last thing that happens before the money goes out the door, and it's the last action of the district court in resolving these. And this Court has taken a flexible approach to determining what qualifies for review under 1292a3. In the Associated Medals case, which is cited in our briefs, even lean priority rulings can effectively determine the merits, because as a practical matter it decides who's going to get the money, and that is therefore appealable, even though it's not a final judgment. So the same is true here, we submit. And BP's appeal from the May 20 order is also clearly timely, because BP filed a timely Rule 59e motion, which tolls the running of the time for filing a notice of appeal under Federal Rule of Appellate Procedure 4. When did that time start? The time started on May 20th, and then BP filed its 59e motion within 28 days, so the time then started from the denial of the 59e motion, and we filed in less than 30 days from that denial order. Turning to the merits, the May 20 order should be vacated, because it improperly interferes with BP's appellate rights and violates Federal Rule of Civil Procedure 79 by preventing the docketing of orders denying judicial review, and by preventing the creation of an appellate record on the docket, which is the ordinary course of the way things are handled in district court proceedings. Appellee's principal response to this problem is to argue that BP waived its right to appeal from individual orders denying judicial review, because the settlement agreement doesn't expressly reference BP's right to appeal. However, that argument is meritless. First of all, this Court in Deepwater Horizon 1 already held that the parties clearly intended to retain their right to appeal to this Court. That's in footnote 3 of that decision. That holding is consistent with the decisions of the Tenth Circuit in the Montes case, the Eleventh Circuit in the Waters case, and the Second Circuit in the Teamsters case, all of which are cited in our briefs, and all of which stand for the proposition that when district court rulings regarding a settlement agreement, when the parties have not explicitly waived in clear and unequivocal terms their right to appeal from district court rulings regarding a settlement agreement, they are appealable, and that rule makes perfect sense because the jurisdictional statutes are part of the background legal rules against which parties negotiate settlement agreements, and if they don't explicitly provide for a waiver of judicial review, of appellate review rather, of district court rulings, then it makes sense to assume that they have not in fact waived that right, and that's, again, consistent with this Court's decision. Do we have any civil cases? I know there's a lot of criminal cases with regard to waiver of appeal. Is there any civil law out there or cases in the civil arena with regard to waiver of appeal? Yes, Your Honor. The three cases I cited, the Montez case from the 10th Circuit, the Teamsters case from the 2nd Circuit, and the Waters case from the 11th Circuit, those are all civil settlement consent decrees of one kind or another, just like the consent decree at issue here, and in each of those cases, the Court applied the rule, but the background presumption, the default rule is if the district court does something that meets the requirements of the jurisdictional statutes and the settlement agreement doesn't waive their right to appeal, then the right to appeal applies because the jurisdictional statutes are the background rule, and that's the very same principle here. This Court has not specifically addressed the question of the significance of silence in a settlement agreement. The default position is that this Court's supervisory powers are always going to allow a review of a district court decision, assuming it's a final decision, unless the parties agree otherwise. Exactly right, Your Honor. Yes, that's the default rule, and that default rule controls here because there's nothing in the settlement agreement to the contrary. The May 20th order on the merits is invalid and should be vacated because it infringes BP's appellate rights. District court denials of BP requests for judicial review are independently appealable because they meet the requirements of 28 U.S.C. 1292a3 and the collateral order doctrine for the same reason that this order does, namely, they resolve the parties' rights and liabilities with respect to the particular amounts that issue in those awards, and they lead to prompt payments that BP would have difficulty approving at the end of the case. The law is clear that district courts may not interfere with parties' appellate rights by blocking the creation of appropriate appellate records or by refusing to docket papers and orders on the district court docket. As the Seventh Circuit said in the Clark case cited in our brief, any attempt by a court at preventing an appeal is unwarranted and cannot be tolerated. So for those reasons alone, we submit the May 20th order should be vacated. In addition, the May 20th order violates Rule 79, which provides that district court clerks must enter orders, judgments, and on the civil docket, and also must enter on the civil docket papers filed by the parties. The district court here specifically rejected district court's, excuse me, BP's request in its Rule 59 e-motion to allow BP to put these papers on the docket and also to direct the clerk to file the district court's denials of judicial review. The district court refused to allow BP to follow the normal procedures under Rule 59, excuse me, Rule 79. And not only is that inconsistent with Rule 79, it's also inconsistent with the public's right of access to the courts under the First Amendment and the common law because the public has a right to know what's being filed in district courts and what district courts are doing and here we have essentially a shadow docket that isn't on the public record and that violates Rule 79 as well as the First Amendment right of access to courts. Those errors require vacator of the order. And finally, the order should also be vacated because it impermissibly blocks BP's rights to seek judicial review of three categories of awards, the three categories mentioned in the final Rules 16 and 19 that were promulgated under the order. And in those categories of awards, BP can't even apply to the district court for judicial review even though the settlement agreement contains no such prohibition and the effect of that is to prevent BP from obtaining a denial of review that it could then appeal. So once again, that aspect of the final Rules also impermissibly interferes with BP's appellate rights. So for all these reasons, we ask that the judgment, that the order of the district court be vacated. And in particular on that last point about final Rules 16 and 19 that block BP from seeking judicial review of particular categories of awards, that has become increasingly important recently because just last month, the district court held a hearing on BP's request to recover overpayments, undisputed overpayments to certain claimants that received payments based on the district court's erroneous matching ruling, which this court subsequently reversed in the Deepwater Horizon 1 appeal. And so in response, once the district court ordered the claims administrator to adopt the correct approach, BP filed a motion seeking to recover overpayments that had been made in light of that erroneous ruling. And class counsel at this hearing, this was just last month, on September 24th, class counsel took the position, among other things, that one reason why BP should not be allowed to recover that overpaid money, even though it was undisputedly overpaid and should never have gone out the door, they took the position that one of the reasons why BP should not be able to recover that money is because BP never filed appeals to this court from the orders, from the awards, allowing that money to go out the door. And of course, BP, by virtue of the May 20 order, was blocked from filing requests for judicial review, which of course are a prerequisite to filing notices of appeal. So for that reason as well, it's important that final rules 16 and 19 be vacated. If the court has... If this court were to rule that there is a right to appeal to this court, do you have any indication how much additional litigation to this court it might cause? Just for selfish reasons, I'm asking. I understand, Your Honor. You know, class counsel has argued that there would be hundreds of thousands of appeals, and that's just not plausible. The settlement agreement sets up multiple tiers of hurdles that narrow down the disputes that could even potentially be available for appeal to this court. Many awards are knocked out on documentation grounds, which can't even be appealed within the settlement program. Then only certain awards, once they get past that, only certain awards can be appealed within the settlement program. There are limitations on what claimants can appeal. There are limitations on what BP can appeal. So as a practical matter, thus far, only about 13 percent of the claims that have had determinations were even potentially appealable within the settlement program. Now, this is before we even get to district court. And of those, only about a fifth have actually been appealed within the settlement program. And you have to go through the settlement program appeals process and get past the hurdles to that, and you also have to pay fees in order to participate in the settlement program appeals process. And by the time you narrow that down, there have only been about 5,000 appeals to the process. And then you still can't appeal to this court because you first have to file a request for judicial review, which only about, this has only happened a little over 400 times in the time since the settlement program has been operating. And so it's only- A long time, nothing happened with regard to things getting here, right? I mean, wasn't there a significant period of time where the settlement process was ongoing and awards were being made and there weren't any appeals to this court? From October to May or March, I'm trying to forget, yes, about eight months, I think there was a period of eight months. But the settlement, of course, began operating in 2012, in mid-2012, so it's been going for more than two years. And there have been 200,000 claims that have been processed to a point of some sort of determination, either a final determination or a preliminary insufficient documentation determination, which is the vast majority of the claims that have been filed to date. And yet, as I say, only about 400 requests for judicial review, a little over 400 requests for judicial review have been filed. And of those, of the ones that have been determined, which is maybe 300 some, there have only been four appeals to this court, the three at issue here, and there's one claimant appeal that's also pending. So yes, there could be some appeals, but they're not, as a practical matter, because of the abuse of discretion standard of review, parties won't be bringing run-of-the-mill factual disputes to the court. It wouldn't make sense to bear the cost. And for claimants, especially the additional delay of an appeal, it's unlikely to achieve anything. The only appeals that would come up would be appeals like these three that involve pure questions of law, where it's an abuse of discretion for the district court not to adopt the correct interpretation of the agreement. So they would affect categories of cases, and then only in those circumstances would it make sense for parties to bring them to this court. Counsel, I'm going to ask, indulge you in this, which may have more bearing on the second group of cases as opposed to this, but they're kind of interrelated. And it's, I'm having a tough time getting my finger on this, but if one can distinguish between discretion to decide an issue, to take up an issue, and discretion in the actual decision process of an issue, if those can be described as two different matters, wouldn't, why wouldn't there be a difference between the way you would, assuming that we have a right to appeal, that's this first case, you have a right to appeal, that you wouldn't necessarily have the same standard of proof with regard to the discretion in deciding an issue to the question of discretion in even deciding whether you're going to decide an issue? In other words, are those two different questions? I know that if you look at an issue and you have the right, the discretion to decide how you're going to decide it, that if you make an error of law, that by definition you have an abuse of discretion in that factor, in that area. But how do you, is there something different in the initial thing when you have a discretion to even decide whether you're going to decide an issue? And in the agreement that we have here, which kind of discretionary power does the district judge have? May I answer that? So first of all, I would say we don't think there is a difference, that it makes sense to get that granular. The Supreme Court in the standard fire case, which is cited in our briefs, that case involved the Class Action Fairness Act, where appellate courts have discretion to decide whether to hear an appeal from a remand order. In that case, the Eighth Circuit exercised its discretion and declined to hear the appeal. The unhappy party filed a cert petition, the Supreme Court granted cert, and proceeded straight to the merits of the remand issue, didn't review only for the question of whether it was wrong for the Court of Appeals not to exercise that discretion. And I think that makes sense in that context, and similarly here, where the two steps collapse into one. The reason why it was an error for the district court not to grant review is the same reason why it was an error for the district court not to set aside these awards. It's the very reason previously expressed by the district court when saying that it was going to agree with the non-profit policy, namely its ruling that grants and contributions can be treated as revenue. So we know what the problem is, and that the same problem infects the initial exercise, the initial decision not to grant review, and makes the merits ruling incorrect. So if there were, you could imagine a circumstance, for instance, in the Declaratory Judgment Act context, that's another example where courts have discretion to decide whether to hear a case. Under the Declaratory Judgment Act, an appellate review is available to review that discretion. But in that circumstance, the decision whether to hear the case is separate and apart from the merits. And so the courts review the discretionary decision whether to hear the case, applying constraints on district court discretion, but that doesn't necessarily resolve the merits. Here, the problem with the district court's exercise of discretion, the error of law, is the same in both. Mr. Engel, one more question brings to mind. There was a release clause that was signed whenever the money was handed over, and the final complete agreement between the parties and supersedes any other agreement, some language of that sort. Does that prevent BP from appealing when they give over the money and sign the release that says this is the end of it? No, Your Honor. The way the release works, actually, the releases are distributed with the initial award by the settlement program. So in many circumstances, and indeed in two of the three non-profit cases at issue here, the claimant signs the release immediately or shortly after receiving the award from the settlement program, BP nonetheless clearly has, undisputedly has the right to appeal within the settlement program, and then, assuming it meets the criteria for appeals, which most of them don't, but if it meets the criteria for BP's right to appeal within the settlement program, as these did, BP nonetheless has the right to appeal, and it nonetheless has the right to seek judicial review, as it did here. So the fact that they signed the release doesn't change that. Does the other party have the right to appeal as well? They do. Again, in some circumstances, and they have to pay the fees and so forth. And also, I would say, the language of the release is clear. Only the claimant is releasing its rights, and by signing the release, it's effectively agreeing to release its rights in exchange for whatever payment is ultimately determined by the entire process. It's due, even though that amount could change from the time they sign the release until the end of the process. Thank you. May it please the Court, Samuel Issacharoff on behalf of the settlement class. I'd like to begin with whether there is an appealable order at all here. The claim by Mr. Hungar is that the May 20th order somehow prevents BP from exercising its rights in this Court, somehow prevents the docketing of cases or decisions by the district court. There is nothing in the order that does that. What the order does is it sets out the internal appeals processes of the settlement pursuant to the authority given to the district court to promulgate such rules. It has no bearing whatsoever on the ability of BP to docket a case, if they so wish, as we will see in the three cases later this morning. And it has no bearing whatsoever on their right of appeals into the courts of appeals at all. The three cases that they cite in their brief for the proposition that this terminates their amendment to Federal Rule of Appellate Procedure 4 and to Federal Rule of Appellate Procedure 58, which are the controlling rules here, not Rule 79, which is simply an administrative rule for the clerk of the court, rules under Federal Rule of Appellate Procedure 4 and Rule 58. If there is no separate document issued by the district court, the parties have 150 days plus 30 days, a total of 180 days to perfect their appeal. There is nothing here. This is simply the internal workings of the settlement. Their brief has this elliptical language about this may cause their rights to be waived. There's not an active verb about what this order actually does that they have identified. Now, the reason that this is significant, there are two reasons for this. The first has to do with the collateral order doctrine. The second has to do with the way that this court has handled complex cases with difficult settlement implementation practices in the past. And the second point is the McMahon point, but I'd like to begin with the collateral order ruling. If we take the footnote 3 of Deepwater Horizon 1 as the template, and that's the only thing that's cited by BP in its briefs, it is noteworthy, first of all, that this is a section of the opinion only endorsed by one judge. It comes prior to Section 1 so that Judge Southwick did not join that part of it. But assuming that that's the template, what we see in the appeal in BP 1, in the Deepwater Horizon 1, in the BEL case, is that at issue was a structural merits interpretation of how payments are going to be made. The appeal was taken from a March order of the court below. And in that decision, what Judge Barbier did was he said the V-shaped curve that is used for calculating the settlement damages will be interpreted in this fashion. It was a policy statement that would govern the payment of a whole category of cases. And the court took it up under the collateral order doctrine. Now, if we look at the criteria set out in Henry v. Lake Charles by this court, which is, I think, the most recent case that carefully elaborates the requirements of the collateral order doctrine, there are four requirements. It must be conclusive, it must be non-separable, it must be unreviewable, and most centrally, it must be important. And when this court discusses what it means to be important, it talks about the vindication of fundamental public policies, it talks about a defamation action, it talks about something like impeding the ability of the president to discharge his functions, something like a violation of the sovereign integrity of the states. This is an internal procedural rule with regard to the administration of the internal appeals process. There is no decision of this court that I can find on the collateral order doctrine that addresses something that, I don't mean to belittle it because it's an important settlement, but something so trivial by comparison to the kinds of issues that have been, that the collateral order doctrine has been used to address. And even the BEL-1 decision, the first decision in the BP litigation, that was a decision that was the overall policy. And that, at the time, we took the position before this court that those policies, if anything is appealable during the administration of the settlement, it should be the major policy questions and not the internal administration or application. Now, it turns out that this court and seven different judges of this court have addressed in unpublished opinions, granted they're unpublished, but seven different cases, judges have had to address some application of this in the most difficult prior mass settlement that this court has reached, which was the In Re Le Soil litigation. And in In Re Le Soil, there was an attempt by a claimant in the settlement to appeal directly to this court and to say, I was denied my benefits, I'm done, I have nothing more to litigate, I want my benefits as promised by the settlement. The claims administrator decided, the district court had affirmed, that this was not something that this particular claimant was not entitled to the benefits. What happened in that case is it goes up to this court and Judge Smith, writing for a three-judge panel, a unanimous three-judge panel, says, we don't deal with these kinds of interlocutory administrations of a settlement. That's purely the function of the district court. This case, Le Soil, then goes through many different other district court decisions, and it comes back up to this court when it's final and when all the administration has been done. At that point, this court says, we will now look at the final, and they take the small piece that was attempted to be litigated in the McMahon case, and then they say, now that's right to be taken up, because we're taking up the entire package. And that's the bread and butter of appellate courts, that you should not hear piecemeal litigation, that you shouldn't hear every interlocutory. So following that line of reasoning, when do we take up these matters? When would there ever be a situation where we could look at the rule and the claims and the effect and the finality as it affects the different parties? When do we get to MECA? I think that there are two different times in two different ways. One is, if there is an issue of significant policy determination that ranges across a broad category of cases, then this court, as did the BEL court, the BEL1 court, could say that satisfies the collateral order doctrine. But it's not yet appealable as of any sort of right, that that might satisfy the collateral order doctrine, because it meets the fourth criterion of importance. If not, BP is perfectly capable of preserving its appellate rights, of docketing the case, of noticing the appeal, and the case would not be right until everything is concluded. That's what this- If everything is concluded, what do you mean by that? Every single claim? Every single claim related to that particular order or that particular interpretation? Well, we have two cases that give us instruction on that from this court. One is the McMahon case, which says, until everything is resolved in the administration of the claims, which is, in fact, how this court handled the in-release oil controversy. And the other one is the Radcliffe case, which was an ongoing supervision of a dispute over royalties. And what this court said in Radcliffe, again, SSC versus Radcliffe, again, unpublished, but it's the same basic principle. It said, even though you are required to pay the 8% royalties during the interim, even though you have an interim award of attorney's fees, that's not final until- that's not appealable until the very end of the case, and then you can try to resolve this when all the matters of interpretation and administration have been concluded. Let's take the secondary cases, I hate to call them secondary, behind this particular- The ones we're going to hear right now. The non-profits. The non-profits. Applying your own standard that you're suggesting now, in those cases, we're dealing with particular appellees where the rules and interpretations have been used to effectuate a claim and determine the amount. Would those be final, collateral order-type things that we can hear? And if not, what is deficient? In those cases, I will argue in the second part, I will argue that under the particular facts of the case, they are not reviewable. And certainly the question of the actual interpretation, for example, whether in-kind legal services to apple seed- But why wouldn't- getting a part for the marriage. Right. Why wouldn't they be reviewable? Because what happens in those cases is that in November, you have a- November of 2012, you have a determination by the claims administrator, here is the policy on non-profits. On December 12, 2012, you have the district court saying, I adopt that policy. And so if there is going to be an appealable order, it's from that. It's either from 12-12 or 12-21-12 when the district court approved the settlement overall and all of these policies were carried into the settlement. Or at the very latest, on March 20th, when BP docketed the policy determination. That's what drives that- those cases. If there is an appeal, if there is an appeal, it has to be- it has to meet the four-part test from the Henry v. Lake Charles case. And it must be important. And it must be something that is not reviewable in the ordinary course of getting- waiting until the case is final. Someday, all of these claims will be resolved. It will happen, hopefully, sooner rather than later. And then they will be reviewable. If there are intervening steps that meet the criteria of the collateral order doctrine, then the court should be able to take them up on the policy determinations. Are you saying that this case is different from the previous cases? I mean, in previous cases, panels of this court granted appeal on an interlocutory appeal issue. Are you saying that the issues in this specific case do not warrant interlocutory appeal, and they did in the other previous deepwater cases? I am saying that this one does not, Your Honor. I am saying that the ruling of the court in the last one was the granting of interlocutory appeal under the collateral order doctrine from an order which looks nothing like the May 20th order. It's a substantive order that says this is how there will be the calculation of revenue losses in this- I assume the court is familiar with this idea of the V, that your revenues drop and then they pick back up again, and how you do the matching and how you do the adjustments and what kind of accounting standards. This was across the board. This was for thousands and thousands and thousands of applicants. And the court said that meets the collateral order doctrine. And I think that if we- it's not specified, it's in a footnote, footnote 3, and there's no argument, there's no reasoning given there, which is fine, it's just an order. But if you apply the court's decisions in cases like Henry v. Lake Charles, what you see is that the court must have made the determination that this was truly important and that this was not reviewable efficiently, effectively, on a one-by-one basis. And so it took it up, it remanded to the district court with instructions to adjust the calculation for all the awards, and that's fine. That's an application of the collateral order doctrine. There are disputes about whether the parties anticipated any appellate review whatsoever, but I think that the court took the position that the norm is that there is some form of appellate review ultimately available, and it took it up on the collateral order doctrine. This one doesn't meet that, Your Honor. And solely for the it's not important reason, is that what you're saying? Well, it's not important, is number one, it's an internal administrative practice. Number two, it is simply pursuant to the rights and obligations of the district court under the settlement agreement. It doesn't go beyond the settlement agreement in any way, which means the settlement agreement became final in December of 2012, and BP never took an appeal from that. At the time, they were a proponent of that settlement. So this is... So is that your untimely argument, or is that the this is an important argument? It is all of these. It is why this is not timely, and they're separate. If this were timely, it would not be proper as a collateral order, Your Honor. I think that this is purely the internal administration, the settlement itself provides that the district court shall have the rule, shall develop the rules of implementation. If this is to be challenged, it first of all has to be shown why this isn't directly pursuant to the settlement agreement itself, and there's nothing here. Second, it has to be shown what the adverse effect is on BP, because after the 2002 amendments to Rule 58, they are free to take an appeal within 180 days, even if it's not docketed, or they are free to docket it themselves, as they did in the three cases here. Rule 79 has never been the subject of an appellate reversal of a district court that we could find. It's not... It's directed purely to the ministerial functions of the clerk. Now, there are old cases, and the American Precision case out of this court that says if you don't get the clerk filing, and this is by Judge Wisdom, if you don't get the clerk filing, then there is no appellate jurisdiction at all. That's what the 2002 amendments did away with. That's no longer a requirement. So it's not even clear how they are adversely affected by this. There's not even a practical claim of where has this had any impact whatsoever on their rights, either at the district court level or on appeal. With respect to the 79 filing, Rule 79 filings, would it make a difference, though? What would be the effect of saying, okay, this is an appealable order, and you're correct, but you don't have to have these filings under 79? The case would still go on, right? Yes. Yes. They could... So your 79, Rule 79 argument, isn't dispositive of the question that we, the main question that we have here. I don't believe it is. I think that they could notice their intent to appeal to the claims administrator to stop the process with regard to any particular claimant, and then they could perfect their time of appeal either by docketing it, again, they have the option, they have docketed countless numbers of things themselves in this case, or within 180 days, they can file a notice of appeal without docketing. That's the effect of the 2002 amendments. And that's what the 2000... If one looks at the advisory committee notes to both Federal Rule of Appellate Procedure 4 and Federal Rule of Appellate Procedure 58, what one finds is that there is... What they want to do away with is the gamesmanship of not knowing when the appeals will run, and they were afraid that because something wasn't docketed, appeals wouldn't begin to run, they couldn't run, and so, in effect, litigants could walk around with appellate rights in their vest pocket, and that was improper. That's what the appeals... That's what the advisory committee notes said. So now you can go up, and there's... It's really quite hard to fathom from their brief, what exactly is the harm here? What exactly is at issue here? And the reason that that's significant is, number one, as Judge Graves, you were asking me, is that they haven't pointed to anything in the May 20th order that is not the direct descendant of the settlement agreement itself. It's just the implementation of the internal operating procedures. And number two, because that's what it is, it doesn't meet the criteria for the collateral. Well, it's more than the implementation. It's the interpretation that we're dealing with, aren't we? Well, I mean, you're... If you assume that this is correct, that's an implementation. If you assume that there's a dispute about what it means, then it's not an implementation. It's a legal question. Well, I'm not sure that that's right, Judge Benavidez. If one looks at the May 20th order, and the operational... The only operational part that really goes to the appeals process is denial of request. If the court, in its discretion, elects not to conduct a review, the court shall notify the appeals coordinator. Upon such notice from the court, the appeals coordinator shall give notice to the parties. That's an implementation question. There's no interpretation. This is just the operational rules of how you run a complicated claims process, because otherwise, then everything becomes a matter of interpretation, because you have to look at the language and draw some conclusion from it. But this is really... This is just administration. This is what happens in every complicated case. There were dozens of orders like this in Lee Soil that had to do with the computation of the royalties. And if we look at, for example, the opinion of the court in the Ratcliffe case, the SSC versus Ratcliffe case, Judge Benavidez, you were on that panel. In that case, the court had to look at the ongoing implementation and interpretation of how the royalties were calculated. And there was an attempt to take an appeal, because there was an actual order that said, pay this much in royalties, pay this much in attorney's fees. And this court said, that's not final enough, because that's just the implementation. That's all I have, Your Honors, if there's no more questions. Thank you. Thank you, Your Honor. Several quick points. First of all, counsel relies exclusively on the collateral order doctrine, of course, as an independent basis for appellate review under 1292A3, which he didn't address. But even with respect to the collateral order doctrine, I have a number of points. First of all, contrary to counsel's argument, Deepwater Horizon 3... Excuse me, Deepwater Horizon 1, footnote 3, is a holding of the panel majority. Jurisdiction is necessary to the exercise of authority that the court addressed in that opinion, which is a published opinion, not an order. And Judge Southwick, his opinion says, concurring. And necessarily, he concurred in the jurisdictional ruling, since the court otherwise wouldn't have had power to act. Wouldn't have had anything to write on. Exactly, Your Honor. Footnote 3, contrary to counsel's assertion, does have reasoning addressing the collateral order doctrine. It specifically says that we have jurisdiction, because the order determined the interpretative dispute, which is completely separate from the merits. And it explicitly addressed the point that BP would not have full ability to remedy its rights at the end of the case, because, as this court said, at that point, the improper awards will have been distributed to potentially thousands of claimants, and BP will have no practical way of recovering these funds. So they addressed all the elements of the collateral order doctrine, held that they were satisfied, and precisely the same reasoning is applicable here. Do you think the issues are different from Deepwater I and this one, that somehow or other, this court would not have jurisdiction to hear the interlocutory appeal in this case, because the issue doesn't meet the criteria? No, Your Honor. With respect to the May 20th order, the issues... The May 20th order addresses, among other things, the very same issues, because one of the things the May 20th order does in Final Rules 16 and 19 is block BP from seeking judicial review of claims that are based on the erroneous matching order, which was the very issue at issue in Deepwater Horizon I, the matching issue. So this order is actually more sweeping in terms of the categories of rights that it affects than that case. And counsel argued about importance. Many of this court's cases listing the collateral order doctrine standards don't even reference importance. The Walker case, which is cited in our briefs and in footnote three of the Deepwater Horizon case, lists the ordinary three criteria without referencing importance, and in any event, Walker itself and Deepwater Horizon both involve questions of interpretation of settlement agreements which the court addressed under the collateral order doctrine. So those cases clearly stand for the proposition that there is collateral order jurisdiction here. The McMahon and SSC cases that counsel referenced are unpublished. They do not address either the collateral order doctrine or 1292A3. They weren't admiralty cases, so 1292A3 didn't apply there. So they have really nothing to do with this case. They are merely construing the final judgment rule, not addressing the exceptions to that rule or the other statutory grounds for appellate jurisdiction here. Counsel says that the May 20th order didn't impose any harm on BP, relying on the 2002 amendments to the federal rules of appellate procedure, but counsel simply misreads those rules. Nowhere in the federal rules of appellate procedure does it say that you can file an appeal without anything on the docket. What counsel is referring to is the 150-day rule under FRAP 4A7, but that rule on its face unambiguously and explicitly says you must have the entry on the docket, and then if the requirement of a separate written judgment applies under Rule 58, or normally you need two things on the docket before you can appeal, in that circumstance we have only one entry, but not the second entry. If you wait 150 days, then you can appeal. There's no rule that says you don't have to have anything on the docket at all before you can appeal, and yet the effect of the district court's orders here is to prevent us from getting anything on the docket. And as if there were any doubt about that from the face of the rules, BP communicated with the settlement program, which is who the judge's rules require these things to go through, and the settlement program first said, yes, you can docket your request for judicial review. Then they said, no, never mind, we're not going to be docketing anything. And that's specifically in the record. We reference it in our objections in our Rule 59 motion, and this is at pages 17967 and 17968 of our brief to Judge Barbier in the district court, where we cite the declaration specifically noting these communications, where the court said it wouldn't even accept requests for review that had any documents attached, so we couldn't make a record, and nothing was going to be placed on the docket. We filed a motion, therefore, having been told that. The Rule 59 e-motion saying, judge, please allow us to put these things on the docket. Please order your orders to be placed on the docket so that we can appeal. The judge denied that motion. So it's unambiguously clear. There's nothing on the docket because of this order, which violates Rule 79. It violates our appellate rights, and it can't be allowed to stand. If the court has no further questions, I thank the court. Thank you.